[Cite as *Marshall & Melhorn, L.L.C. v. Sullinger*, 2020-Ohio-1240.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Marshall & Melhorn, LLC | Court of Appeals No. L-18-1218 |
| Appellee | Trial Court No. CI0201605038 |
| v. | |
| Douglas Sullinger | **DECISION AND JUDGMENT** |
| Appellant | Decided: March 31, 2020 |

* * * * *

James H. Irmen, for appellee.

Kent D. Riesen, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, Douglas Sullinger, appeals two judgments of the Lucas County

Court of Common Pleas, awarding summary judgment in favor of appellee, Marshall &

Melhorn, LLC, on appellee's claim for unpaid attorney's fees in the amount of

$34,117.73 plus interest at the rate of 18 percent per annum, as well as $1,987.50 in costs. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} Appellant was the sole owner of four companies collectively referred to as the Vendita Entities. A fifth Vendita Company, Vendita Technology Group, LLC, was owned jointly by appellant and his former wife, Carol Sullinger. Carol had a 51 percent interest in Vendita Technology Group, LLC, and appellant had a 49 percent interest.

{¶ 3} In 2015, divorce proceedings were initiated between appellant and Carol. On March 13, 2015, it was discovered that the headquarters of the Vendita Entities had been wiretapped from March 10, 2015, to March 12, 2015. Carol was allegedly responsible.

{¶ 4} On the advice of his divorce attorney, Marty Holmes, appellant retained the services of attorney James Irmen, a partner at the appellee law firm. The scope of the representation, as set forth in an engagement letter executed on April 29, 2015, was:

> [T]o review the Operating Agreement of Vendita Technology Group, LLC,
> determine whether or not Carol Sullinger has committed a material breach
> of the Operating Agreement, if so, serve notices required by the Operating
> Agreement, and provide the follow up services necessary to effectuate a
> buyout of Carol Sullinger's membership interest. Marshall & Melhorn's
> acceptance of this engagement is limited to representing you in your claims

2.

against Mrs. Sullinger. If our services are required on other matters, another engagement letter will be sent.

In addition, the engagement letter set forth the hourly rates of the attorneys that would be performing the legal services, and specified that "[a]ll tasks of all attorneys and professional personnel will be itemized and described in each monthly invoice."

{¶ 5} On June 1, 2015, appellant purchased a home in the Stone Oak subdivision using cash from the account of Vendita Technology Group, LLC, a marital asset. In response, Carol Sullinger filed numerous motions in the domestic relations court, including a motion to add the Vendita Entities as third parties, a motion to preclude the Vendita Entities from dispensing any assets or property, a motion to freeze the Vendita Entities bank accounts, a motion to appoint a receiver, a motion for disbursement of $700,000, and a motion for a partial award of attorney fees and legal expenses. On June 12, 2015, appellant entered an appearance in the domestic relations court on behalf of the Vendita Entities.

{¶ 6} The motions were scheduled for a hearing on June 17, 2015. Appellant was represented in court by Holmes and Irmen. Instead of holding a hearing, however, the parties negotiated and reached a partial settlement that was read into the record. Appellant accepted the agreement and stated on the record that his questions were answered throughout the day and that he was satisfied with his attorneys' representation.

{¶ 7} Following the hearing, on June 18, 2015, Irmen sent Carol Sullinger's counsel a document reflecting his understanding of the agreement. Counsel responded

3.

with several suggestions, and the parties continued to negotiate on the details. Irmen testified that negotiations were ongoing because appellant kept changing his mind, and was asking for more than what was agreed to on June 17, 2015.

{¶ 8} During the negotiations, appellant hired another attorney, Erik Chappell, who participated in the negotiations beginning in July 2015. Ultimately, on August 5, 2015, Chappell filed an objection to the entry of a consent order in the divorce proceedings. Shortly thereafter, on August 7, 2015, appellant terminated appellee's representation, citing concerns over the cost and efficiency of having multiple attorneys. Appellee then withdrew from representation in the divorce proceedings as requested.

{¶ 9} On November 8, 2016, appellee initiated the present matter by filing a complaint for unpaid attorney fees arising out of its representation of appellant. Appellee alleged four unpaid invoices totaling $22,132.78 after application of a $25,000 retainer, along with interest at the rate of 1.5 percent per month for all balances that are 30 days past due.

{¶ 10} Appellant filed his reply, in which he raised, inter alia, the affirmative defenses that appellee breached the terms of the engagement letter, and that appellee failed to provide competent legal advice.

{¶ 11} On June 28, 2017, appellee moved for summary judgment on its claim. Included with the motion was an affidavit from Irmen, in which he attests,

> Based upon my knowledge, experience, training, and education, the
>
> actions undertaken by [appellee] on behalf of [appellant] in his divorce case

4.

were at or above the standard of care for such representation in the Toledo legal community. The fees charged to [appellant] were reasonable and the services provided were necessary. My opinions are made with a reasonable degree of professional certainty.

The affidavit also included the unpaid monthly invoices sent to appellant.

{¶ 12} On August 21, 2017, appellant filed his response to the motion for summary judgment. In his response, appellant raised two arguments that are relevant here.

{¶ 13} First, appellant argued that genuine issues of material fact existed concerning his affirmative defense that appellee engaged in legal malpractice. In support, appellant submitted his own affidavit, as well as the affidavit of attorney James Fruth. Through the affidavits, appellant described that the advice given by Holmes to purchase the Stone Oak house led to the Vendita Entities' bank accounts being frozen. The frozen bank accounts had a negative impact on the Vendita Entities and their ability to make payroll, which forced appellant into agreeing to the consent order. As part of the consent order, appellant made substantial cash payments to Carol Sullinger. Those cash payments financed Carol's divorce efforts, which lengthened the divorce process and increased appellant's legal costs. In addition, the consent order placed restrictions on the Vendita Entities' ability to hire, spend, grant bonuses, among other things, which damaged the Vendita Entities' growth.

5.

{¶ 14} Second, appellant argued that appellee billed appellant in "block billing," which violated the terms of the engagement letter and prevented appellant from being able to determine whether the attorney fees were necessary and reasonable.

{¶ 15} On September 30, 2017, appellee filed its reply in support of its motion for summary judgment. In the reply, appellee argued that appellant failed to demonstrate that appellee's conduct proximately caused any damage to him or the Vendita Entities, and thus appellant's defense of legal malpractice must fail. In particular, appellee argued that the testimony demonstrated that the cause of appellant's legal troubles in the divorce proceedings was his purchase of the Stone Oak house. However, the affidavit and deposition testimony established that appellee did not have any role in the purchase of the Stone Oak house. Separately, appellee also argued that appellant failed to demonstrate any specific damages sustained by the Vendita Entities.

{¶ 16} Concurrently with its reply, appellee filed a motion to strike portions of the affidavits of appellant and Fruth. Appellant opposed the motion to strike, arguing, inter alia, that it was filed beyond the time limit set forth in Civ.R. 12(F).

{¶ 17} On November 13, 2017, appellant filed his sur-reply to appellee's motion for summary judgment. Following further discovery, appellant filed an additional response to appellee's motion for summary judgment. On March 12, 2018, appellee filed its final brief in support of its motion for summary judgment. A hearing was then held on the motion for summary judgment on March 23, 2018.

6.

{¶ 18} On June 26, 2018, the trial court entered its decision granting summary judgment in favor of appellee. At the beginning of its decision, the trial court addressed several evidentiary matters. Relevant here, the trial court granted appellee's motion to strike portions of the affidavits of appellant and Fruth.

{¶ 19} The trial court then found that appellee satisfied its initial burden of proving that it was entitled to judgment through Irmen's affidavit. The court further concluded that appellant failed to satisfy his burden to show that a genuine issue of material fact existed on his affirmative defenses. Specifically, the court found that appellant's malpractice claims evolve from two events: (1) appellant's purchase of the Stone Oak house, and (2) the consent order.

{¶ 20} As to the Stone Oak purchase, the court held that even if appellee owed a duty to appellant to defend the Stone Oak purchase, there is no evidence that appellee breached that duty causing damages. First, the court found no evidence that appellant told Irmen that he was going to buy the Stone Oak house. Second, although Fruth summarily asserted that appellee "did nothing to 'handle' or 'defend' Doug Sullinger's purchase of the house at Stone Oak," the record demonstrates otherwise. Of the six motions filed by Carol Sullinger in response to the Stone Oak purchase, three of them were filed in the afternoon on Friday, June 5, 2015, and granted by the court on Monday, June 8, 2015. As to one of those motions—involving a restraining order regarding the Huntington Bank accounts—Irmen filed a motion to modify on June 16, 2015, and brought a proposed order with him to the June 17, 2015 hearing. A fourth motion was

7.

filed on June 12, 2015, and appellee filed a response on June 16, 2015. The final two motions were filed late in the afternoon on June 16, 2015, the day before the hearing. Notably, all of the motions were purportedly resolved at the June 17, 2015 hearing. Third, and finally, the court found no evidence that appellant was damaged by appellee's alleged failure to respond to the motions. In-house counsel for the Vendita Entities testified that the companies never missed a payroll or incurred a late charge as a result of the Huntington Bank accounts being frozen for nine days. In addition, appellant did not provide any evidence of damages occasioned by having to defend against the motions filed by Carol Sullinger. Therefore, the court held that appellant failed to satisfy the elements for his defense of legal malpractice regarding the purchase of the Stone Oak house.

{¶ 21} As to the consent order, the court found that while Irmen and Holmes negotiated the agreement on June 17, 2015, Fruth testified that there were no damages caused by reaching that agreement other than that the businesses were "unsettled" until the August 14, 2015 consent order was filed. The court found that following the June 17, 2015 hearing, appellee continued to negotiate the agreement because appellant kept changing his mind and asking for more. In addition, the court found that beginning in July 2015, attorney Chappell also was involved in the ongoing negotiations, and by at least August 2, 2015, was the lead negotiator. The court noted that appellee was not even representing appellant by the time the consent order was signed by the court.

8.

{¶ 22} With respect to damages from the consent order, the court examined Fruth's conclusory statement that appellee's malpractice has been extremely costly to appellant in terms of money, time, and lost opportunity to grow his business. The court identified the basis for Fruth's conclusion, which was that Irmen did not explain to appellant that the consent order contained business restrictions, that appellant lost good employees because of the salary restrictions, and that Vendita Technology Group, LLC, was now in the red by $350,000. However, the court found that there was no evidence in the record to support Fruth's conclusions. In particular, Irmen explained the business restrictions to appellant before, during, and after the June 17, 2015 hearing. Moreover, the consent order specifically stated that the restrictions could be changed with the prior consent of both Sullingers, and there is no evidence that Carol Sullinger ever denied a request by appellant to change one of the restrictions or that appellant even requested a change. As a specific example, there was testimony that appellant, because of the consent order, was unable to match an offer from another company to one of his employees. But, appellant admitted that he never requested permission from Carol Sullinger to meet the offer. Regarding the $350,000 debt owed by Vendita Technology Group, LLC, the court found that appellant could have kept sufficient funds in the company to pay the required disbursements, in that appellant admitted that he moved money all around the Vendita Entities, and it was appellant that decided how much profit would remain in Vendita Technology Group, LLC. Finally, the court held that because multiple attorneys were involved in giving advice, expert testimony was required to

connect the proximate cause of any damages to the appropriate attorney. However, Fruth failed to differentiate the proximate cause of any damages between Irmen and Holmes. Therefore, the court held that appellant failed to satisfy the elements for his defense of legal malpractice regarding the consent order.

{¶ 23} Lastly, the court considered appellant's affirmative defense of breach of contract based on the issue of block billing. The court found that appellee testified that he believed he complied with the terms of the engagement letter by itemizing each activity performed on a particular day along with the total time spent each day, and listing which employee performed each task. The court also found that the engagement letter requested that appellant contact appellee if he ever had questions or concerns regarding the charges. The court held that appellee was entitled to its attorney fees because appellant never expressed dissatisfaction with the fees during the tenure of the attorney-client relationship.

{¶ 24} On that point, Irmen testified that appellant never contacted the firm regarding the bills. Notably, appellant testified in his deposition that he complained about the bills in July 2015. However, this testimony contradicted his earlier affidavit testimony wherein appellant stated that he was not aware of any issues with billing practices until late February or early March of 2016, and no explanation was given for the conflict. The court held that an unexplained contradiction between a witness's deposition testimony and affidavit does not create a genuine issue of material fact that will defeat a motion for summary judgment.

10.

{¶ 25} Furthermore, the court held that even if appellee breached the terms of the engagement letter by engaging in "block billing," it was not a material breach in that it did not affect the substantial purpose of the contract to provide legal services. The court found that the failure to assign an amount of time spent for every task was, at most, a slight inadvertence or technical departure from the terms of the engagement letter. Thus, the court held that appellant had not established his affirmative defense of breach of contract.

{¶ 26} Accordingly, finding that appellee had satisfied its burden to establish that no genuine issue of material fact existed and that it was entitled to summary judgment on its claim for unpaid attorney fees, and finding that appellant failed to satisfy his burden to demonstrate his affirmative defenses, the trial court awarded summary judgment in favor of appellee. The court then continued the matter for a hearing on damages.

{¶ 27} At the hearing on damages, appellee submitted its invoices sent to appellant, its interest calculation, and its bill of costs for the present litigation. Following the hearing, appellant filed a brief in which he elaborated on his arguments that appellee was not entitled to any attorney fees because it failed to provide independent expert testimony that its fees were reasonable, as well as his argument that the contractual interest rate should not apply because the engagement letter was between appellee and appellant, personally, but the work performed was for the Vendita Entities.

{¶ 28} On September 14, 2018, the trial court entered its judgment awarding $34,117.73, plus contractual interest at the rate of 18 percent per annum and costs of

11.

$1,987.50, to appellee. In its decision, the court found that Irmen's testimony was sufficient to establish the reasonableness of the attorney fees. Further, the court found that the terms of the engagement letter extended to legal work performed on behalf of the Vendita Entities, and that such was the intent of the parties.

## II. Assignments of Error

{¶ 29} Appellant has timely appealed the trial court's June 26, 2018, and September 14, 2018 judgments, and now asserts two assignments of error for our review:

> 1. The trial court committed error in granting summary judgment on June 26, 2018.

> 2. The trial court abused its discretion and committed reversible error in awarding attorney fees and awarding of prejudgment interest at a rate above statutory rate on September 14, 2018.

## III. Analysis

{¶ 30} We review the grant or denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 527 N.E.2d 198 (9th Dist.1989); *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Under Civ.R. 56(C), summary judgment is appropriate where (1) no genuine issue as to any material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that

conclusion is adverse to the nonmoving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 31} In his first assignment of error, appellant challenges the merits of the trial court's award of summary judgment. In support, appellant presents a number of arguments, which we will address in turn.

{¶ 32} First, appellant argues that the trial court erred when it held that appellee satisfied its initial burden of proof on a claim for unpaid legal fees. In this case, appellant presented a claim for breach of contract. The prima facie elements of a breach-of-contract action are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. *Siemaszko v. FirstEnergy Nuclear Operating Co.*, 187 Ohio App.3d 437, 2010-Ohio-2121, 932 N.E.2d 414, ¶ 23 (6th Dist.).

{¶ 33} In addition,

[w]here, prior to employment, the attorney and client have reached an agreement as to the hourly rate to be charged and the amount of the retaining fee, but the agreement fails to provide for the number of hours to be expended by the attorney, in an action for attorney fees the burden of proving that the time was fairly and properly used and the burden of showing the reasonableness of work hours devoted to the case rest on the attorney.

13.

*Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter*, 100 Ohio App.3d 313, 323, 653 N.E.2d 1245 (10th Dist.1995), citing *Jacobs v. Holston*, 70 Ohio App.2d 55, 60, 434 N.E.2d 738 (6th Dist.1980).

{¶ 34} As proof that the fees were reasonable, appellee provided the affidavit of Irmen, which stated,

> Based upon my knowledge, experience, training, and education, the actions undertaken by [appellee] on behalf of [appellant] in his divorce case were at or above the standard of care for such representation in the Toledo legal community. The fees charged to [appellant] were reasonable and the services provided were necessary. My opinions are made with a reasonable degree of professional certainty.

{¶ 35} On appeal, appellant argues that Irmen's own affidavit does not meet the standard of an expert's affidavit, and thus is insufficient to demonstrate that appellee's fees were reasonable. However,

> [t]estimony of the attorney seeking recovery of fees that the case involves complex issues, that the fees were within a reasonable range for that type of case, and that the client never questioned statements sent to the client constitutes sufficient evidence to establish the reasonableness of the charged fees, thereby negating the need for independent expert testimony.

*Baker & Hostetler, L.L.P. v. Delay*, 10th Dist. Franklin No. 08AP-1007, 2009-Ohio-2507, ¶ 30.

{¶ 36} Here, it is undisputed that the Sullinger divorce was complex litigation. Further, the trial court found, based upon appellant's affidavit, that appellant never questioned the billing statements sent to him. Finally, Irmen testified that the fees were reasonable and necessary. Thus, expert testimony was not necessary, and Irmen's affidavit was sufficient to satisfy appellee's initial burden under Civ.R. 56(C). *See id.* at ¶ 33-34 (because the client did not express dissatisfaction with the services rendered or the fees charged, the attorney's affidavit stating that the fees were reasonable satisfied the Civ.R. 56(C) evidentiary burden in an action for unpaid legal fees, and expert testimony was not required). Therefore, appellant's first argument is without merit.

{¶ 37} Second, appellant argues that the trial court improperly struck portions of the affidavits of appellant and Fruth. Appellant contends that Civ.R. 12(F) limits the time to file motions to strike to 28 days. Because appellee did not file its motion to strike until 38 days had elapsed, appellant concludes that the trial court erred in striking portions of the affidavits.

{¶ 38} However, Civ.R. 12(F) applies only to pleadings, not to affidavits attached to motions for summary judgment. *See State ex rel. Hanson v. Guernsey, Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 549, 605 N.E.2d 378 (1992) ("Under Civ.R. 7(A), only complaints, answers and replies constitute pleadings."). Therefore, appellant's second argument is without merit.

15.

{¶ 39} In his third and fourth arguments, appellant alleges that the evidence does not support summary judgment. In particular, appellant takes issue with the court's determination relative to his defense of recoupment for legal malpractice.

> To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss.

*Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997), syllabus. Failure to establish a genuine issue of material fact as to any of the elements necessitates that appellant's defense must fail. *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, ¶ 8.

{¶ 40} Here, because we agree with the trial court that appellant has not demonstrated a genuine issue of material fact regarding whether there is a causal connection between the conduct complained of and the resulting damage or loss, we will limit our analysis to that element.

{¶ 41} Appellant's third argument focuses on the evidence he presented to demonstrate that he suffered damages caused by appellee's alleged malpractice. That evidence consists of the affidavit and deposition testimony of appellant and Fruth. In appellant's affidavit, he states that "[t]he consent order placed significant restrictions on

the business, including in the areas of hiring, raises, entering of contracts, and obtaining lines of credit needed to accelerate receivables."

{¶ 42} In his deposition testimony, appellant went into further detail about the restrictions on the Vendita Entities. Notably, however, the consent order stated that the restrictions could be avoided with the prior written consent of appellant and Carol Sullinger. Appellant provided testimony that he lost an employee because he could not match a $200,000 salary increase, but he did not directly testify that he asked for a waiver of that restriction and was rejected. Appellant also provided testimony that he was unable to get a line of credit to accelerate his receivables, and that Carol Sullinger refused to provide consent for that line of credit, but appellant did not testify how that harmed the business. Thus, we find that appellant's testimony consists of conclusory statements that do not establish that he suffered any damages as a result of appellee's alleged malpractice. *See Jackson v. J-F Ents., Inc.*, 6th Dist. Lucas No. L-10-1285, 2011-Ohio-1543, ¶ 26 ("In order to defeat summary judgment, the nonmoving party must produce evidence beyond allegations set forth in the pleadings and beyond conclusory statements in an affidavit.").

{¶ 43} In Fruth's original affidavit, he stated "The malpractice of Irmen * * * appears to have been extremely costly to Doug Sullinger in terms of money, time, lost opportunity to grow his business, Vendita Technology Group, Inc., which was effectively frozen for two years and severely damaged Vendita." Likewise, in his supplemental affidavit, Fruth stated, "It remains my professional opinion that [Holmes's and Irmen's]

17.

malpractice were extremely costly to Doug Sullinger in terms of money, time, lost opportunity to grow his business." However, Fruth was unable to provide any facts to support his assertions. When asked at his deposition whether there was any damage to the businesses that was caused by the businesses being joined in the divorce proceeding, Fruth replied, "I don't know, that's beyond the scope of my abilities to say one way or the other." When asked if there was anything in the consent order that caused damage to the businesses, Fruth answered, "I can't quantify it. The damage is the business was or the businesses were unsettled." Thus, we find that Fruth's testimony consists of conclusory statements, and is not sufficient to meet appellant's burden under Civ.R. 56. *See Jackson* at ¶ 26 ("[I]t is improper for an expert's affidavit to set forth conclusory statements and legal conclusions without sufficient supporting facts.").

{¶ 44} In his fourth argument, appellant focuses on the deposition of Irmen as support for the denial of summary judgment. However, appellant does not identify anything in Irmen's deposition that demonstrates that appellant suffered damages as a result of appellee's alleged malpractice.

{¶ 45} Therefore, we hold that appellant has failed to demonstrate a genuine issue of material fact regarding his defense of recoupment for legal malpractice.

{¶ 46} Fifth, appellant argues that the trial court improperly found that appellee's alleged failure to provide itemized billing was not a material breach. "The long and uniformly settled rule as to contracts requires only a substantial performance in order to recover upon such contract. Merely nominal, trifling, or technical departures are not

18.

sufficient to breach the contract." *Ohio Farmers' Ins. Co. v. Cochran*, 104 Ohio St. 427, 135 N.E. 537 (1922), paragraph two of the syllabus.

{¶ 47} The agreement between appellee and appellant was for appellee to provide legal services "in [appellant's] claims against Carol Sullinger." The engagement letter provided that "All tasks of all attorneys and professional personnel will be itemized and described in each monthly invoice." In the monthly invoices sent to appellant, appellee detailed each activity completed by an attorney and the total amount of time to complete those activities each day. For example, on May 5, 2015, Irmen spent 1.6 hours to "review emails from Kim Savich and reply; review email from Marty Holmes; telephone conference with Ms. Savich; review operating agreement; email status report to Doug Sullinger." We hold that to the extent appellee's billing practices were a breach of the requirement to itemize the tasks—in that they did not specify the amount of time required to perform each individual task—such a breach was a nominal or technical departure from the terms of the contract. Therefore, we hold that appellee did not materially breach the terms of the engagement letter.

{¶ 48} Lastly, appellant argues that the trial court erred when it found that the two main issues were the purchase of the Stone Oak property and the consent order. Appellant contends that the main issues were Irmen's failure to do anything to protect the Vendita Entities, and Irmen's representation before and during the June 17, 2015 hearing. Upon our review, we find that however organized, the trial court considered Irmen's conduct in response to the Stone Oak purchase, and his representation before and during

19.

the June 17, 2015 hearing. Furthermore, we have likewise examined the relevant evidence, and have determined that appellant failed to satisfy all of the elements of his defense in recoupment for appellee's alleged malpractice. Therefore, we find appellant's sixth argument to be without merit.

{¶ 49} Accordingly, having found no merit to the arguments presented by appellant, his first assignment of error is not well-taken.

{¶ 50} In his second assignment of error, appellant argues two issues. First, appellant argues that appellee failed to establish that its fees were reasonable. Second, appellant argues that appellee is not entitled to the contractual interest rate of 18 percent per annum on the past due amounts.

{¶ 51} As to whether the attorney fees were reasonable, appellant argues that appellee was required to submit the affidavit of an independent expert. However, "in Ohio there is no steadfast rule that the 'reasonableness' of attorney fees must be proved by expert testimony." *Cleveland v. Capitalsource Bank*, 8th Dist. Cuyahoga No. 103231, 2016-Ohio-3172, ¶ 13, citing *Joseph G. Stafford & Assocs. v. Skinner*, 8th Dist. Cuyahoga No. 68597, 1996 WL 631112 (Oct. 31, 1996). "[E]vidence of reasonableness 'may take the form of testimony, affidavits, answers or other forms of sworn evidence.'" *Id.*, quoting *R.C.H. Co. v. 3-J Machining Serv., Inc.*, 8th Dist. Cuyahoga No. 82671, 2004-Ohio-57, ¶ 25.

{¶ 52} "A trial court's determination as to the reasonableness of attorney fees is reviewed for abuse of discretion." *Hadden Co., L.P.A. v. Zweier*, 10th Dist. Franklin No.

20.

15AP-210, 2016-Ohio-2733, ¶ 21. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Prof.Cond.R. 1.5 provides that the factors to be considered in determining the reasonableness of a fee include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the service properly; (2) the likelihood that the acceptance of employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer performing the services; and (8) whether the fee is fixed or contingent.

{¶ 53} In this case, the trial court found that Irmen testified that the charges were reasonable and customary and necessary, that Irmen has been practicing law for over 30 years, that he has an AV Martindale rating and is a former president of the Toledo Bar Association, and that Fruth admitted that the $275 hourly rate charged by Irmen was reasonable. Further, the trial court found that the Sullinger divorce was very complex, extremely adversarial, and involved significant personal and corporate assets. Thus, the court concluded that "competent and credible evidence was presented by [appellee] concerning the reasonableness of [appellee's] fees, including time computations, efforts expended, novelty and complexity of the issues involved, and counsel's skill and ability in pursuit of the representation." We agree with the trial court, and hold that it did not

21.

abuse its discretion when it determined that the amount of attorney fees sought by appellee was reasonable.

{¶ 54} As to the issue of whether appellee is entitled to the contractual rate of interest, appellant argues that the engagement letter is between appellant and appellee, but appellee did most of its work for the Vendita Entities. Thus, appellant concludes that there was no contract with the Vendita Entities, and the statutory interest rate applies to any past due amounts.

{¶ 55} "The purpose of contract construction is to effectuate the intent of the parties." *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Id.* "A court will resort to extrinsic evidence in its effort to give effect to the parties' intentions only where the language is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning." *Id.*

{¶ 56} Here, the engagement letter states,

> Marshall & Melhorn, LLC is pleased to accept your offer to engage us as legal counsel in your claims against Carol Sullinger. It is my understanding that our initial scope of work is to review the Operating Agreement of Vendita Technology Group, LLC, determine whether or not Carol Sullinger has committed a material breach of the Operating Agreement, if so, serve notices required by the Operating Agreement, and

22.

provide the follow up services necessary to effectuate a buyout of Carol Sullinger's membership interest. Marshall & Melhorn's acceptance of this engagement is limited to representing you in your claims against Mrs. Sullinger. If our services are required on other matters, another engagement letter will be sent.

{¶ 57} We find that the engagement letter leaves some ambiguity as to the specific entities that will be represented under the agreement. Although the engagement letter purports to establish appellee as legal counsel for appellant, it includes legal work for Vendita Technology Group, LLC, in the scope of the agreement. Turning to extrinsic evidence to resolve this ambiguity, it is clear that the intent of the parties was for appellee to provide legal services to appellant on behalf of all of the Vendita Entities. Appellant is the sole owner of the Vendita Entities. Further, appellant testified in his affidavit, "I decided to retain Marshall and Melhorn to address the business issues of Vendita Technology Group Inc. and other related companies," and Irmen in his affidavit stated, "[appellant] retained [appellee] to represent him and his companies, Vendita Technology Group, LLC, Vendita Management Corp., Vendita Asset Group, LLC, and Vendita Services Corp. (the "Vendita Companies") in a divorce proceeding against his wife, Carol Sullinger." Therefore, we hold that the legal services performed by appellee for which it is seeking payment, were performed under the terms of the engagement letter. Appellee is thus entitled to interest on the unpaid invoices at the contractual rate.

{¶ 58} Accordingly, appellant's second assignment of error is not well-taken.

23.

### IV.  Motion to Withdraw

{¶ 59} Following the oral arguments and submission of this matter to the court, counsel for appellant has moved to withdraw.  Upon due consideration, the motion is found well-taken and is granted.  It is therefore ordered that attorney Kent D. Riesen be removed as counsel of record for appellant.

### V.  Damages for Delay

{¶ 60} At the end of its appellate brief, appellee argues that this appeal was frivolous.  Thus, appellee seeks damages pursuant to App.R. 23, which provides, "If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs."  "A frivolous appeal under App.R. 23 is essentially one which presents no reasonable question for review."  *Talbott v. Fountas*, 16 Ohio App.3d 226, 475 N.E.2d 187 (10th Dist.1984), paragraph one of the syllabus.

{¶ 61} Upon due consideration, we find that there were reasonable grounds for this appeal.  Accordingly, appellee's request for App.R. 23 sanctions is denied.

### VI.  Conclusion

{¶ 62} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                 _____
                                                JUDGE

Arlene Singer, J.                       

                                       _____
Thomas J. Osowik, J.                  JUDGE
CONCUR.


                                       _____
                                                JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.