[Cite as *Conley v. Wapakoneta City School Dist. Bd. of Edn.*, 2022-Ohio-2915.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

TREY R. CONLEY,

    PLAINTIFF-APPELLANT,          CASE NO.  2-21-18

    v.

WAPAKONETA CITY SCHOOL DISTRICT
BOARD OF EDUCATION, ET AL.,       O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2020 CV 0097

**Judgment Affirmed**

**Date of Decision:  August 22, 2022**

APPEARANCES:

    *Clay W. Balyeat, Aaron L. Bensinger and*
       *Christopher A. Jackson* **for Appellant**

    *Michael J. Valentine and Keona R. Padgett* **for Appellees**

**MILLER, J.**

**{¶1}** Plaintiff-appellant, Trey Conley, appeals the September 1, 2021 judgment of the Auglaize County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Wapakoneta City School District Board of Education ("Wapakoneta City School District") and Thomas Allison, on the grounds of sovereign immunity. On appeal, Conley contends that defendants-appellees were not entitled to sovereign immunity.

*Background*

**{¶2}** The case arises from an injury incurred during a March 28, 2016 baseball practice for the Wapakoneta City School District's eighth-grade boys' baseball team. That day, the team, which included Conley, was scheduled to have its first baseball game of the season. However, due to rain, the game was cancelled and the team instead practiced at the Wapakoneta High School gymnasium.

**{¶3}** The team spent the beginning of practice in the batting cages located on the upper level of the gymnasium. Toward the end of the practice, Allison, a teacher at Wapakoneta City Schools and the coach of the baseball team, set up the lower gymnasium like a baseball field for a "team building activity." (Allison's Apr. 22, 2021 Depo. at 14). As part of the exercise, some members of the team assumed positions in the makeshift field, while other members of the team took turns batting.

{¶4} Allison provided the team with a "hit stick" which he found in the high school's equipment locker to use in the place of a bat and a tennis ball was used in the place of a baseball. (*Id.* at 18, 30); (Conley's Mar. 16, 2021 Depo. at 39). During the game, Conley was approximately 10 to 15 feet away from the home plate and waiting his turn to bat in the "on-deck circle." (Conley's Mar. 16, 2021 Depo. at 42). This area was down the third base line but not in the field of play. (*Id.*); (Woodruff's Apr. 22, 2021 Tr. at 7). Allison was in the area behind home plate. (Allison's Apr. 22, 2021 Depo. at 16, 38). Jeven Woodruff, a fellow member of the baseball team, came up to bat. Woodruff swung the hit stick at the ball and the stick left his hand and hit Conley in the eye.

{¶5} While Allison applied first aid, he immediately delegated other members of the team to locate Conley's emergency contact information, attempt to locate the school's athletic trainer, and call for emergency medical services. (*Id.* at 17). Conley was taken to the hospital where a surgeon removed shards from his eye. Tragically, Conley's left eye was subsequently removed due to the nature and extent of the injuries.

{¶6} The hit stick was a thin, bat-like object with a handle and was used to practice swinging and making contact with the ball. (*Id.* at 32). The hit stick, which Allison recalled using as far back as 2005, was admittedly "worn." (*Id.* at 17-18, 20, 30). The handle was foam, but electrical tape was wrapped around the handle.

(*Id.* at 19; Plaintiff's Ex. 4). Allison added some of the electrical tape to the handle the day prior to Conley's injury because the tape that was already covering part of the handle was starting to tear and expose the foam underneath, and Allison wanted to repair the rip before the damaged area increased. (*Id.* at 19-20, 35). At the time, Allison did not "see any problem" with putting tape over the foam handle because he had added tape to other pieces of equipment before and had not had "any problems with that." (*Id.* at 20). Furthermore, the hit stick already had some tape on it. (*Id.* at 20, 35).

{¶7} At the time he applied the tape to the hit stick, Allison was not concerned that he was making the hit stick more slippery or covering the knob on the end of the stick where it is held by the batter. (*Id.*). He acknowledged that he "modified" the hit stick by adding the tape and conceded that the addition of the tape made the hit stick more dangerous. (*Id.* at 24). However, it was only with the benefit of hindsight that he came to believe the addition of the electrical tape made the hit stick more "slippery" or "dangerous." (*Id.* at 37-39). Prior to the incident, Allison had applied tape to other pieces of equipment, including the hit stick at issue here, and it "worked fine." (*Id.* at 36). Accordingly, Allison "did not give it a thought that [the electrical tape] may make it slippery." (*Id.* at 35-36). Moreover, Allison stated that he has observed an actual baseball bat with a knob and no

electrical tape on it leave the hands of a batter in a baseball game or practice "numerous times." (*Id.* at 38).

**{¶8}** With respect to coaching, Allison stated his "number one concern" is the safety of his players and that he "definitely did not" want to see his players injured. (*Id.* at 37-39). With respect to the hit stick, Allison stated, "From my experience of using similar things, I felt it was safe then, and I thought it was safe now." (*Id.* at 40). However, Allison stated that he would not use the hit stick again because it caused Conley's injury and he would not want to take the chance of another player being injured. (*Id.* at 40-41).

**{¶9}** In addition to the newly added electrical tape, the hit stick was also missing the end cap. (Rex's Apr. 22, 2021 Depo. at 13, 18, Plaintiff's Ex. 5); (Allison's Apr. 22, 2021 Depo. at 24, 34-35). Allison did not recall the hit stick ever having end caps. (Allison's Apr. 22, 2021 Depo. at 34). Allison opined that, in hindsight, the hit stick might have been safer to use if there had been an end cap on it. (*Id.* at 34-35). However, he did not have that concern prior to Conley's injury. (*Id.*).

**{¶10}** On August 24, 2020, Conley filed a complaint for personal injuries against appellees. Conley filed an amended complaint on September 8, 2020 and a second-amended complaint on May 5, 2021. In his second amended complaint, Conley asserted that Wapakoneta City School District acted in a wanton and

reckless manner and that the school district, through its employees, including Allison, was negligent for providing its student athletes with unsafe and defective equipment. Appellees timely filed answers to the complaints.

{¶11} On May 18, 2021, Wapakoneta City School District and Allison filed a motion for summary judgment asserting sovereign immunity. On July 13, 2021, Conley filed his response to appellees' motion for summary judgment. Attached as an exhibit to his response was an expert opinion of Shawn Pender, the vice president of player development of the Cincinnati Reds. In his expert opinion, Pender stated that Allison's actions were "reckless" and that, as a result, Allison and the Wapakoneta School District should be liable for Conley's injuries. On August 10, 2021, Wapakoneta City School District and Allison filed their reply in support of their motion for summary judgment. On September 1, 2021, the trial court filed its judgment entry granting appellees' motion for summary judgment on the grounds of sovereign immunity.

{¶12} Conley filed his notice of appeal on September 22, 2021. He raises two assignments of error for our review. For ease of discussion, we will address the assignments of error out of order.

### Assignment of Error No. II

**The Trial Court erred by disqualifying the Appellant's expert witness, when the statement and conclusion of the expert should have been considered as the Appellant is the party entitled to have the evidence or stipulation construed most strongly in his favor.**

**{¶13}** In his second assignment of error, Conley argues that the trial court erred by excluding the expert testimony of Shawn Pender. Specifically, the trial court excluded the opinion on the grounds that Pender was not qualified as an expert witness on the relevant subject matter and that his expert opinion "falls short of the requirements of the Ohio Rules of Evidence and Civil Rule 56." (Doc. No. 83). While the Wapakoneta City School District and Allison were critical of the affidavit in their rebuttal to Conley's opposition to the motion for summary judgment, a specific objection to the admissibility of the affidavit was not filed. Nevertheless, "[w]here the opposing party fails to object to the admissibility of the evidence under Civ.R. 56, the court may, but is not required to consider such evidence when it determines whether summary judgment is appropriate." *Sullinger v. Sullinger*, 3d Dist. Hardin No. 6-20-06, 2020-Ohio-5225, ¶ 27 (citations omitted).

**{¶14}** "The determination of the admissibility of expert testimony is within the discretion of the trial court." *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, ¶ 9, citing Evid.R. 104(A). Such a determination will not be disturbed absent an abuse of discretion. *Miller v. Bike Athletic Co.*, 80 Ohio St.3d 607, 616 (1998). An abuse of discretion constitutes more than an error of judgment; rather, it implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶15} In excluding the Pender affidavit from consideration, the trial court found the "expert" to lack the qualifications necessary to render an opinion on the particular subject matter raised in the motion for summary judgment. Upon review of the record, we do not find that the trial court abused its discretion by excluding Pender's expert opinion.

{¶16} Pender's curriculum vitae indicates that he is employed as the vice president of player development for a major league baseball team and has various experience as a collegiate baseball coach and scout. However, his curriculum vitae is conspicuously devoid of experience coaching high school or middle school baseball. Additionally, the Pender affidavit attempts to discredit Allison and other witnesses by citing to the Ohio High School Athletic Association ("OHSAA") rules and the National Federation of State High School Associations' rules. However, the basis for Pender's understanding and application of the rules to his opinion is unclear. Furthermore, as evidenced by the Rules themselves, which were attached as an appendix to various depositions, the Rules only apply to games, not practices. This point was further emphasized by the unrefuted testimony of Allison and Rex and the affidavit of Jerry Snodgrass, who at the time of Conley's injury was the OHSAA assistant commissioner. (Allison's Apr. 22, 2021 Depo. at 11, 33-34, Plaintiff's Ex. 1); (Rex's Apr. 22, 2021 Depo. at 9-10, 23-24, Plaintiff's Ex. 1); (Doc. No. 79; Ex. 1).

{¶17} Moreover, Conley relies heavily on Pender's expert opinion that Wapakoneta City School District and Allison's actions were reckless and wanton. However, in stating that the appellee's actions are reckless or wanton conduct does not create an issue of fact, but merely states a legal conclusion. Pender makes his conclusions without demonstrating he has an understanding of how the terms are defined by Ohio law. The determination of whether Allison's conduct, in particular, constituted reckless or wanton conduct is a central inquiry. The issue is "not of such a highly technical nature to be beyond the comprehension of an average juror." *Donlin v. Rural Metro Ambulance, Inc.*, 11th Dist. Trumbull No. 2002-T-0148, 2004-Ohio-1704, ¶ 26. Accordingly, expert testimony on the ultimate issue was not necessary for the trial court to determine whether appellees' conduct was reckless or wanton. *Michael v. Worthington Ohio City School Dist.*, 10th Dist. Franklin No. 19AP-145, 2020-Ohio-1134, ¶ 36. "Thus, because a fact-finder is capable of reaching this conclusion without an expert-witness opinion, appellant's expert-witness testimony would be inadmissible at trial and, therefore, could not be relied upon in a summary judgment action." *Donlin* at ¶ 26.

{¶18} Accordingly, we do not find that the trial court abused its discretion by excluding Pender's expert opinion. Conley's second assignment of error is overruled.

## Assignment of Error No. I

**The Trial Court erred when it granted summary judgment in favor of the Appellees, by finding that the sovereign immunity applied, thereby dismissing the Appellant's complaint when the Appellant had proven the exceptions to the immunity defense.**

{¶19} In his first assignment of error, Conley argues that the trial court erred by granting summary judgment in favor of Wapakoneta City School District and Allison on the basis of sovereign immunity. For the reasons that follow, we disagree.

*Standard of Review*

{¶20} "Whether a party is entitled to immunity is a question of law properly determined by the court prior to trial pursuant to a motion for summary judgment." *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 12, citing *Conley v. Shearer*, 64 Ohio St.3d 284, 292 (1992).

{¶21} "We review a decision to grant a summary judgment motion on the basis of sovereign immunity de novo." *Goebel v. Minster*, 3d Dist. Auglaize No. 2-21-19, 2022-Ohio-883, ¶ 35. "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.). Summary judgment is proper where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can reach but one conclusion

when viewing the evidence in favor of the non-moving party, and the conclusion is adverse to the non-moving party. Civ.R. 56(C); *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.*, 69 Ohio St.3d 217, 219 (1994).

**{¶22}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Carnes v. Siferd*, 3d Dist. Allen No. 1-10-88, 2011-Ohio-4467, ¶ 13, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.*, citing *Dresher* at 292. "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; he may not rest on the mere allegations or denials of his pleadings." *Id.*, citing *Dresher* at 292 and Civ.R. 56(E).

**{¶23}** Material facts are those facts "'that might affect the outcome of the suit under the governing law.'" *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). "Whether a genuine issue exists is answered by the following inquiry: [d]oes the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Id.*, quoting *Anderson* at 251-252.

*Relevant Law: Sovereign Immunity*

**{¶24}** Ohio's Political Subdivision Tort Liability Act, which governs tort liability and immunity for political subdivisions and their employees, is codified in Chapter 2744 of the Revised Code. *McDonnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, ¶ 20. "Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a familiar, three-tiered analysis." *Pelletier*, 153 Ohio St.3d 611, 2018-Ohio-2121, ¶ 15. "The general rule is that political subdivisions are not liable in damages." *Brady v. Bucyrus Police Dept.*, 3d Dist. Crawford No. 3-10-21, 2011-Ohio-2460, ¶ 44.

**{¶25}** "The first tier of the sovereign-immunity analysis involves the general grant of immunity to political subdivisions by R.C. 2744.02(A)(1), which provides that 'a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.'" *McDonnell* at ¶ 21. However, that immunity is not absolute. *Id. See* R.C. 2744.02(B).

**{¶26}** The second tier of the analysis involves establishing if any of the five exceptions to immunity that are listed in R.C. 2744.02(B) lift the sovereign immunity and expose the political subdivision to liability. *McDonnel* at ¶ 22.

{¶27} Finally, if one of the five exceptions to immunity outlined in R.C. 2744.02(B) applies and if any of the defenses that may be asserted under R.C. 2744.02(B)(1) by the political subdivision do not apply, we proceed to the third tier of the analysis and determine if any of the defenses in R.C. 2744.03 apply to reinstate the political subdivision's immunity. *Id*. at ¶ 23.

{¶28} "Immunity is also extended to individual employees of political subdivisions." *Lambert v. Clancy*, 125 Ohio St.3d 231, 2010-Ohio-1483, ¶ 10; R.C. 2744.03(A)(6). However, the three-tiered analysis is not used to analyze claims against individual employees. Rather, pursuant to R.C. 2744.03(A)(6), an employee is immune from liability unless "(a) [t]he employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code." R.C. 2744.03(A)(6). "For these purposes, allegations of negligence are insufficient to overcome the immunity granted to an employee of a political subdivision who acts within his or her official duties." *Lambert* at ¶ 10.

*Analysis*

*Wapakoneta City School District*

**{¶29}** With respect to the first tier of the immunity analysis, the parties agree that appellants are considered political subdivisions. Indeed, R.C. 2744.01(F) defines a "[p]olitical subdivision" as "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." Further, school boards are political subdivisions under the statute. *See Horen v. Bd. of Edn. of Toledo Pub. Schools*, 6th Dist. Lucas No. L-09-1143, 2010-Ohio-3631, ¶ 34. *See* R.C. 2744.01(F). Thus, Wapakoneta City School District is a political subdivision generally entitled to immunity pursuant to R.C. 2744.02(A)(1).

**{¶30}** With immunity generally established and the first tier of the immunity analysis complete, we next turn to the second tier of the analysis to determine if any of the exceptions to immunity listed in R.C. 2744.02(B)(1)-(5) are applicable. Here, Conley argues that the exceptions outlined in R.C. 2744.02(B)(2) and R.C. 2744.02(B)(4) apply.

**{¶31}** R.C. 2744.02(B)(2) provides that "political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to *proprietary* functions of the political subdivisions." (Emphasis added.) Here, Conley contends that the Wapakoneta City

School District was engaged in a proprietary, rather than governmental, function when his injury occurred, and, accordingly, the Wapakoneta City School District is not entitled to sovereign immunity. On the other hand, the Wapakoneta City School District argues that it was engaged in a governmental function at the time of the injury and, therefore, the R.C. 2744.02(B)(2) exception to immunity does not apply.

**{¶32}** "Governmental function" and "proprietary function" are mutually exclusive terms whose definitions are outlined in R.C. 2744.01. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 557 (2000); R.C. 2744.01. Specific functions expressly designated as governmental functions and proprietary functions are listed in R.C. 2744.01(C)(2) and R.C. 2744.01(G)(2), respectively. R.C. 2744.01(C)(1) provides that a "government function" is one that satisfies any of the following criteria:

> (a) A function that is imposed upon the state as an obligation of sovereignty and that is performed by a political subdivision voluntarily or pursuant to legislative requirement;
>
> (b) A function that is for the common good of all citizens of the state;
>
> (c) A function that promotes or preserves the public peace, health, safety, or welfare; that involves activities that are not engaged in or not customarily engaged in by nongovernmental persons; and that is not specified in division (G)(2) of this section as a proprietary function.

R.C. 2744.01(C)(1). Relevant to the present case, R.C. 2744.01 provides that a "governmental function" includes "[t]he provision of a system of public education"

and "[t]he design, construction, reconstruction, renovation, repair, maintenance, and operation of any school athletic facility, school auditorium, or gymnasium or any recreational area or facility." R.C. 2744.01(C)(2)(c), (u). Proprietary functions, on the other hand, are defined, in pertinent part, by R.C. 2744.01(G)(1)(b) as a function that "promotes or preserves the public peace, health, safety, or welfare and that involves activities that are customarily engaged in by nongovernmental persons."

{¶33} Conley argues that Wapakoneta City School District's decision to use a modified hit stick was proprietary in nature and, therefore, the Wapakoneta City School District is not immune from liability. In support of this argument, Conley relies primarily on *Greene County Agricultural Society v. Liming*, in which the Supreme Court of Ohio determined that an agricultural society conducting a hog show at county fair was engaged in a proprietary rather than a governmental function. *Greene Cty. Agricultural Soc.* at 561. In that case, the Supreme Court of Ohio reasoned as follows:

> It is apparent to us that even though conducting a county fair may be an activity not customarily engaged in by nongovernmental persons, conducting livestock competition *is* an activity customarily engaged in by nongovernmental persons. Any organization, whether private or public, can hold a competition of this type. The consideration that many such competitions are conducted within county fairs cannot change the fact that there is nothing inherently governmental about them. In this situation, educational value alone is not enough to convert what otherwise would not be a governmental function into something that is a governmental function. We see no reason to distinguish a livestock competition at a county fair from any other similar competition, such as a livestock competition held elsewhere

-16-

than at a county fair, or a dog or cat show, or an art show, or a chili cook-off, or a beauty pageant, or a car show.

(Emphasis sic.) *Id.* at 560.

**{¶34}** Conley attempts to parallel *Greene County Agricultural Society* to the present case by arguing that "a baseball practice is customarily engaged by athletes, who are nongovernmental persons" and that "[a]ny baseball team, whether private or public, can hold a baseball competition just as any agricultural society or county fair can hold a livestock competition." (Appellant's Brief at 7-8). Conley reasons that because his injury occurred at a "competition that is organized and operated by a public entity," the school was engaged in a proprietary function at the time of his injury. (*Id.* at 8).

**{¶35}** However, "[t]he provision of public education is specifically identified as a governmental, rather [than] a proprietary, function pursuant to R.C. 2744.01(C)(2)(c)." *Perkins v. Columbus Bd. of Edn.*, 10th Dist. Franklin No. 13AP-803, 2014-Ohio-2783, ¶ 12. "This extends to most school activities and administrative functions of the educational process, even if not directly comprising part of the classroom teaching process." *Id.* Where, as here, the function is related to athletic events conducted by public school systems, courts have found that the public school system was engaging in a governmental rather than a proprietary function. *See also Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 2007-Ohio-2070, ¶ 10; *Wilson v. McCormack*, 11th Dist. Ashtabula No. 2016-A-0039,

2017-Ohio-5510, ¶ 31 ("the provision of a public system of education is expressly defined as a governmental function by R.C. 2744.01(C)(2)(c), and * * * the hiring, retention, and supervision of a high school basketball coach is an inherent part of that activity"). For instance, in *Spaid v. Bucyrus City Schools*, this court found that a public school engaged in a governmental function by conducting a "field day" on the public school grounds. *Spaid v. Bucyrus City Schools*, 144 Ohio App.3d 360, 362, 364 (3d Dist.2001). Accordingly, we find the function at issue is a governmental, rather than a proprietary function. Accordingly, R.C. 2744.02(B)(2), which relates only to proprietary functions, does not apply.

{¶36} Next, we address Conley's argument that the R.C. 2744.02(B)(4) exception from immunity applies to the instant case. R.C. 2744.02(B)(4) provides, in relevant part, that

> political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in [R.C. 2921.01].

R.C. 2744.02(B)(4). Accordingly, to establish that the exception outlined in R.C. 2744.02(B)(4) applies, "a plaintiff must demonstrate that the injury (1) resulted from a political subdivision employee's negligence, (2) occurred within or on the grounds of buildings used in connection with governmental function, and (3) resulted from

-18-

a physical defect within or on those grounds." *Leasure v. Adena Local School Dist.*, 4th Dist. Ross No. 11CA3249, 2012-Ohio-3071, ¶ 15.

**{¶37}** We address the third prong of the physical-defect exception first, which requires that the injury result from a physical defect. "[B]ecause the term 'physical defect' is not defined in Chapter 2744, 'courts have applied the common meaning of the phrase.'" *Moss v. Lorain Cty. Bd. of Mental Retardation*, 9th Dist. Lorain No. 15CA010767, 2016-Ohio-169, ¶ 11, quoting *Hawsman v. Cuyahoga Falls*, 9th Dist. Summit No. 27221, 2014-Ohio-4325, ¶ 23. "Considering the definitions of the words 'physical' and 'defect' together * * * 'it would seem * * * that a "physical defect" is an imperfection that possesses some materiality that diminishes the worth or utility of the object at issue.'" *Id.*, quoting *Hawsman* at ¶ 23.

**{¶38}** Conley argues that the exception under R.C. 2744.02(B)(4) is applicable because the hit stick was modified by Allison in a manner that caused it not to operate as intended. Thus, Conley contends that the hit stick constitutes a "physical defect" for the purposes of this exception. We disagree.

**{¶39}** "Ohio cases addressing the 'physical defect' exception in general involve physical defects as part of the structure of buildings and the maintenance of those structures." *Douglas v. Columbus City Schools Bd. of Edn.*, 10th Dist. Franklin No. 18AP-940, 2020-Ohio-1133, ¶ 25. As noted, Conley seeks to invoke

the exception under R.C. 2744.02(B)(4) based on the allegation that the hit stick, modified by Allison with the addition of electrical tape, constituted a "physical defect." Specifically, Conley argues that adding the tape made the bat more slippery and covered up the "knob" on the end of the hit stick designed to prevent the equipment from leaving the batter's hands. However, based on the facts presented, we agree with the trial court's determination that the alleged defect was not a "physical defect" within or on the grounds or buildings of the political subdivision as contemplated by R.C. 2744.02(B)(4).

{¶40} In support of Conley's position, he primarily relies on two cases, both of which are distinguishable from the instant case. In *R.K. v. Little Miami Golf Center*, a case that Conley attempts to analogize to the present case, the appellate court found that a tree limb which fell and caused injury to the appellant was a physical defect pursuant to R.C. 2744.02(B)(4). *R.K. v. Little Miami Golf Cent.*, 1st Dist. Hamilton No. C-130087, 2013-Ohio-4939, ¶ 20. Although Conley attempts to parallel a falling tree branch to the hit stick, we are not persuaded. The unmaintained tree branch, which fell and caused injury in *R.K. v. Little Miami Golf Center* was a physical part of the grounds of the public golf course maintained by the park district. Here, although the hit stick was physically present in the building, it is, by design, a readily mobile object that was not part of the building or grounds.

{¶41} Conley also relies on *Spaid v. Bucyrus City Schools*, 144 Ohio App.3d 360 (3d Dist.2001), a case in which this court analyzed a prior version of R.C. 2744.02(B)(4) to determine that a school district was liable for an injury which occurred at a school-sponsored track and field day. In 2003, the legislature amended R.C. 2744.02(B)(4) to add the language "and is due to physical defects within or on the grounds of" while keeping the rest of the statute the same. *Nicholson v. LoanMax LLC*, 7th Dist. Belmont No. 16 BE 0057, 2018-Ohio-375, ¶ 21. "'The statute was changed to limit liability for negligence that is due to physical defects within or on the grounds that are used in connection with a governmental function.'" *Id.*, quoting *Roberts v. Switzerland of Ohio Local School Dist.*, 2014-Ohio-78, ¶ 20 (7th Dist.). *See Contreraz v. Bettsville*, 3d Dist. Seneca No. 13-10-48, 2011-Ohio-4178, ¶ 33. Accordingly, *Spaid* is inapplicable to this case as it relates to findings relating to physical defects within or on the grounds.

{¶42} Rather, we agree with the trial court's determination that the hit stick is not a physical defect within or on the grounds or buildings of the political subdivision as contemplated by R.C. 2744.02(B)(4). Because Conley has failed to satisfy his burden that his injury was due to a physical defect within or on the grounds of the gymnasium, he cannot demonstrate all of the requirements under the R.C. 2744.02(B)(4) exception. Thus, we need not discuss any questions of fact pertaining to Wapakoneta City School District's purported negligence. *Contreraz*

at ¶ 26-51. Moreover, we further agree with the trial court's conclusion that none of the immunity exceptions under R.C. 2744.02(B) are applicable. Thus, the trial court also properly determined that the Wapakoneta City School District was entitled to immunity pursuant to R.C. 2744.02(A)(1) and did not err in granting its motion for summary judgment.

{¶43} The dissent focuses on the absence of safety netting or a screen Conley could have stood behind to constitute a physical defect.[1] A "physical defect" under the R.C. 2744.02(B)(4) exception has been defined as "a perceivable imperfection that diminishes the worth or utility of the object at issue." (Emphasis deleted.) *See Duncan v. Cuyahoga Community College*, 8th Dist. Cuyahoga No. 97222, 2012-Ohio-1949, ¶ 26. In *Duncan*, the plaintiff was injured when she was knocked to the floor while taking part in a self-defense seminar. In the ensuing lawsuit against Cuyahoga Community College, where the training took place, she alleged that her injuries were caused by a "defect" in the college's failure to use mats on the floor while conducting the self-defense class. *Id.* at ¶ 25. Employing the definition of physical defect, the *Duncan* court disagreed and found that a lack of mats on the

---

[1] This assertion was not raised by Conley in the trial court below or in his arguments on appeal. We decline to manufacture arguments for the parties, especially where the trial court did not have the opportunity to consider the specific matter. *Marysville Newspapers, Inc. v. Delaware Gazette Co., Inc.*, 3d Dist. Union No. 14-06-34, 2007-Ohio-4365, ¶ 21; *Kelvon Properties, Ltd. v. Medina Automotive, LLC*, 9th Dist. Medina No. 18CA0062-M, 2019-Ohio-584, ¶ 3 ("This Court declines to chart its own course when an appellant fails to provide such guidance. It is not this Court's duty to create an argument for the appellant, and we decline to do so here."); *In re X.S.*, 3d Dist. Mercer Nos. 10-20-09, 10-20-10, 10-20-11, 10-20-12, and 10-20-13, 2021-Ohio-1174, ¶ 66.

floor of a classroom did not constitute a physical defect. *Id.* at ¶ 27, citing *Hamrick v. Bryan City School Dist.*, 6th Dist. Williams No. WM-10-014, 2011-Ohio-2572, ¶ 29.

**{¶44}** Similarly, we do not find Allison's failure to use a safety screen to constitute a physical defect of the gymnasium where the indoor practice was taking place. This is especially true considering Allison was using a tennis ball in place of a baseball and the hit stick rather than an actual bat. On the contrary, cases addressing the "physical defect" exception involve physical defects as part of the structure of buildings and the maintenance of those structures. *Douglas v. Columbus City Schools Bd. of Edn.*, 10th Dist. Franklin No. 18AP-940, 2020-Ohio-1133, ¶ 26 (teacher's failure to take proper precautions during a science experiment was not a "physical defect" within or on the grounds or buildings of the school).

*Coach Allison*

**{¶45}** Allison individually is entitled to immunity as an employee of a political subdivision pursuant to R.C. 2744.03(A)(6) unless his actions were manifestly outside the scope of his employment or official responsibilities, his actions were with malicious purpose, in bad faith, or in a wanton or reckless manner, or civil liability is expressly imposed upon him by a section of the Revised Code. R.C. 2744.03(A)(6).

{¶46} Conley does not argue that Allison's actions were outside his scope of employment or official responsibilities or that civil liability is expressly imposed upon him by a section of the Revised Code. Rather, Conley contends that Allison's actions were wanton and reckless. We disagree.

{¶47} "The Supreme Court of Ohio has defined all of the requisite operative terms—willful, wanton, and reckless—finding that they describe different and distinct degrees of care and are not interchangeable." *Riehm v. Green Springs Rural Volunteer Fire Dept.*, 3d Dist. Seneca No. 13-18-15, 2018-Ohio-4075, ¶ 42.

{¶48} "Willful misconduct implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposefully doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, paragraph two of the syllabus.

{¶49} "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is a great probability that harm will result." *Id.* at paragraph three of the syllabus.

{¶50} "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus.

{¶51} "All three standards-willful, wanton, and reckless-describe conduct that is more than mere negligence. * * * If reasonable minds could only conclude that the employee's conduct demonstrates, at most, negligence, then summary judgment is appropriate." *Hoffman v. Gallia Cty. Sheriff's Office*, 4th Dist. Gallia No. 17CA2, 2017-Ohio-9192, ¶ 47. Here, Conley concedes that Allison's actions were not willful misconduct but argues that his actions were wanton and reckless. We disagree.

{¶52} Conley contends that Allison, while exercising his duties as baseball coach, "failed to take any care towards his duty * * * to protect his players when there was great probability that the hit stick would cause harm." (Appellant's Brief at 14-15). Conley argues that by choosing to use a hit stick that was worn and did not have protective end caps and by further modifying the hit stick by wrapping electrical tape on its handle, Allison caused the hit stick to become more dangerous. Yet, Allison still set up the gymnasium as a small baseball field and permitted the team to use the modified hit stick.

{¶53} However, after reviewing the record, we do not find that Allison's actions were wanton or reckless. The events that occurred in this case are largely undisputed. According to Allison, the hit stick had been in use since at least 2005 when it was obtained by the Wapakoneta City School District. Allison recalled

using it on other occasions and had used the equipment with at least one other team without issue. (Allison's Apr. 22, 2021 Depo. at 18).

{¶54} On the day before Conley's injury, Allison added electrical tape to the hit stick in an effort to repair a "rip" on the hit stick's handle which was starting to expose the foam underneath. (*Id.* at 19-20). Allison conceded the tape was "slippery," however, he did not "see any problem" with putting the electrical tape on the equipment because the hit stick already had tape on it. (*Id.* at 20, 36). Further, Allison had added tape to other equipment in the past without problem. (*Id.* at 36). The tape did cover part of the "knob" at the bottom of the foam handle. (*Id.* at 24).

{¶55} Allison conceded he made a modification to the hit stick by adding electrical tape to the handle of the equipment and that the modification made the hit stick more dangerous. However, it was only with the benefit of hindsight that he came to realize that the hit stick was more dangerous and that, based on his past experience, he did not believe that adding the electrical tape to the handle of the equipment would make it more dangerous.

{¶56} Allison had coached school athletics for many years, in a number of different capacities, and he cited the safety of his athletes as his "number one concern" in his role as baseball coach. (*Id.* at 37). At the time of the incident, Allison did not have any safety concerns with respect to the hit stick and, in fact,

was standing "behind the plate" at the time of the injury without concern of being injured. (*Id.* at 16, 38-39).

**{¶57}** It is undisputed that, immediately following the injury, Allison attempted to apply first aid and delegated several other members of the team to call the ambulance, attempt to locate the school athletic trainer, and notify Conley's parents of the injury. Allison arrived to visit Conley at the hospital immediately following the incident, and Conley's mother described Allison as "pale and shaking." (Schleter's Mar. 16, 2021 Depo. at 14).

**{¶58}** Although it is possible that the facts presented could constitute negligence, in order for Allison to be subject to personal liability, his conduct had to be more than negligent. There is no indication that Allison failed to exercise any care, as is the standard for wanton misconduct or that his actions were "substantially greater than negligent conduct" as required for his actions to be deemed reckless.

**{¶59}** By all indications, Allison did not believe adding electrical tape to the hit stick would cause injury, a belief that was based on his past experience. Further, he did not appreciate the potential probability of an injury. Although Allison's actions in applying electrical tape may have been, in hindsight, unwise, the facts provided indicate Allison's actions were well-intended and he genuinely did not appreciate the risk of harm.

**{¶60}** Accordingly, we do not find that Allison's actions amounted to willful, wanton, or reckless conduct such as to expose him to personal liability pursuant to R.C. 2744.03(A)(6). Therefore, we find that the trial court did not err by determining sovereign immunity shielded Allison from personal liability for Conley's injuries.

*Conclusion*

**{¶61}** This case presents a tragic accident and we are sympathetic to the injury Conley suffered and the resulting losses he sustained. However, the immunity statutes were designed to prevent liability unless certain situations or conduct are present, and those situations or conduct are not present here.

**{¶62}** Accordingly, we find that the trial court did not err by determining that sovereign immunity applied to Allison and the Wapakoneta City School District.

**{¶63}** Conley's first assignment of error is overruled.

**{¶64}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Auglaize County Court of Common Pleas.

***Judgment Affirmed***

**WILLAMOWSKI, J., concurs.**

**ZIMMERMAN, P.J., concurring in part and dissenting in part.**

{¶65} I respectfully dissent from the majority opinion's decision affirming the trial court's decision granting summary judgment in favor of the defendants. Nevertheless, I do not dispute that there is no genuine issue of material fact that Wapakoneta School District is *not* excepted from its political-subdivision immunity under R.C. 2744.02(B)(2). That is, as a matter of law, a public-school district providing after-school sports is considered a governmental function. *See Wilson v. McCormack*, 11th Dist. No. 2016-A-0039, 2017-Ohio-5510, ¶ 31 (holding that "the provision of a public system of education is expressly defined as a governmental function by R.C. 2744.01(C)(2)(c), and, for the reasons set forth above, the hiring, retention, and supervision of a high school basketball coach is an inherent part of that activity"). However, that is where my consensus diverges.

{¶66} Based on my review of the record, there are evidentiary disputes which must be presented to a jury to determine whether Wapakoneta School District is entitled to political-subdivision immunity under R.C. 2744.02(B)(4) and whether Allison is entitled to immunity under R.C. 2744.03(A)(6).

{¶67} To review, "R.C. 2744.02(B)(4) requires two elements for the exception to apply: (1) a negligent act and (2) a physical defect within or *on* the grounds of the political subdivision." (Emphasis added.) *Roberts v. Switzerland of Ohio Local School Dist.*, 7th Dist. Monroe No. 12 MO 8, 2014-Ohio-78, ¶ 21.

{¶68} Under the R.C. 2744.02(B)(4) exception to political-subdivision immunity, the majority opinion focuses on whether Allison's modification of the hit stick (bat) constitutes a physical defect. Even though that is one way to assess the question presented, because decisions granting summary judgment are reviewed de novo, another way to approach the inquiry is to consider whether the absence of a safety feature satisfies the definition of a physical defect for purposes of R.C. 2744.02(B)(4). In other words, whether there is a genuine issue of material fact that the absence of an appropriate safety feature for the indoor-baseball practice rendered the school gymnasium physically defective under R.C. 2744.02(B)(4).

{¶69} The Supreme Court of Ohio has "left open the possibility that the absence of a safety feature could constitute a physical defect." *Roberts* at ¶ 25, citing *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, ¶ 25. Specifically, "[t]he only mention the [c]ourt made as to the 'physical defect' element was to point out that the trial court did not fully consider whether the absence of a required smoke detector is a 'physical defect,' which if established would dissolve immunity." *Id.*, citing *Moore* at ¶ 25. Since that decision, Ohio's courts of appeal, including this court, have grappled with the issue. *See, e.g.*, *Contreraz v. Bettsville*, 3d Dist. Seneca No. 13-10-48, 2011-Ohio-4178, ¶ 41; *Roberts* at ¶ 30; *Doe v. Greenville City Schools*, 2d Dist. Darke No. 2020-CA-4, 2021-Ohio-2127, ¶ 27; *Hamrick v. Bryan City School Dist.*, 6th Dist. Williams No.

WM-10-014, 2011-Ohio-2572, ¶ 29. Consequently, the Supreme Court of Ohio recently accepted review of the issue. *See Doe v. Greenville City Schools*, 165 Ohio St.3d 1449, 2021-Ohio-3908.

{¶70} Importantly, however, (based on the current state of the law) the issue here is not whether the absence of a safety feature (as a matter of law) can constitute a physical defect for purposes of R.C. 2744.02(B)(4). Rather, the issue for this court to resolve in this appeal is whether the evidence provided by the parties in this case reflects a genuine (triable) issue that the absence of such safety feature constitutes a physical defect within the meaning of the statute.

{¶71} Even though the trial court (without providing specific reasons why) disqualified the affidavit of Shawn Pender ("Pender") opposing summary judgment provided by Conley for the limited basis that Pender did not adequately qualify as an expert witness, the majority opinion aptly points out that an expert opinion is unnecessary since "[t]he issue 'is not of such a highly technical nature to be beyond the comprehension of the average juror.'" Majority Opinion at ¶ 17, quoting *Donlin*, 2004-Ohio-1704, at ¶ 26. Thus, if an expert opinion is unnecessary to resolve underlying issue, the simple facts (notwithstanding any conclusory legal statements) in Pender's affidavit is Civ.R. 56-style evidence that can create a genuine issue of a material fact. Specifically, none of the evidence from Pender's affidavit (that

appears below) requires any special technical expertise. *See Marshall & Melhorn, LLC v. Sullinger*, 6th Dist. Lucas No. L-18-1218, 2020-Ohio-1240, ¶ 36.

**{¶72}** Importantly, "Civ.R. 56(E) requires that 'affidavits shall be made on *personal knowledg*e, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.'" *Natl. City Bank v. TAB Holdings, Ltd.*, 6th Dist. Erie No. E-10-060, 2011-Ohio-3715, ¶ 12, citing Civ.R. 56(E). *See also State ex rel. Mayes v. Holman*, 76 Ohio St.3d 147, 148 (1996). Thus, "[w]hile a trial court is permitted to exclude materials from consideration in summary judgment, it must do so pursuant to Civ.R. 56(E)." *A-M.R. v. Columbus City School Dist.*, 10th Dist. Franklin No. 14AP-1066, 2015-Ohio-3781, ¶ 16.

**{¶73}** Because "Civ.R. 56(E) states that a 'court may permit affidavits to be supplemented or opposed by depositions or by further affidavits," it is within the trial court's discretion to permit the introduction of supplemental affidavits. *Walter v. AlliedSignal, Inc.*, 131 Ohio App.3d 253, 263 (3d Dist.1999), quoting Civ.R. 56(E) and citing *Renfro v. Black*, 52 Ohio St.3d 27, 32 (1990) (holding that a trial judge has wide discretion when determining the admissibility of such evidence, and will not be disturbed on appeal absent a clear showing of abuse of discretion). Consequently, a trial court's decision to allow the introduction of such supplemental affidavits will not be reversed absent an abuse of discretion. *See Harvard Mtge*

*Corp. v. Phillips*, 11th Dist. Geauga No. 2007-G-2783, 2008-Ohio-1132, ¶ 29. *See also Beattie v. McCoy*, 1st Dist. Hamilton No. C-170197, 2018-Ohio-2535, ¶ 25. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶74}** Here, based on Pender's experience as a baseball coach and baseball player, it is uncontroverted that the evidence that follows is not only made on his personal knowledge but also complies with the full dictates of Civ.R. 56(E). *Accord Salemi v. Cleveland Metroparks*, 145 Ohio St.3d 408, 2016-Ohio-1192, ¶ 18 (noting that "'personal knowledge can be inferred from the nature of the facts in the affidavit and the identity of the affiant'"), quoting *State ex rel. Lanham v. DeWine*, 135 Ohio St.3d 191, 2013-Ohio-199, ¶ 15.). Therefore, it is my opinion that the trial court acted outside the bounds of its discretion by discounting Pender's affidavit.

**{¶75}** Furthermore, it is imperative to point out that when a party fails to object to the admissibility of evidence submitted in support of, or in opposition to, a motion for summary judgment , the trial court may consider such evidence when determining whether summary judgment is appropriate. *See A-M.R.* at ¶ 16; *Armaly v. Wapakoneta*, 3d Dist. Auglaize No. 2-05-45, 2006-Ohio-3629, ¶ 17 ("Where the opposing party fails to object to the admissibility of the evidence under Civ.R. 56, the court may, but is not required to consider such evidence when it determines whether summary judgment is appropriate."). *See also Churchwell v. Red Roof*

*Inns, Inc.*, 10th Dist. Franklin No. 97APE08-1125, 1998 WL 134329, *1 (Mar. 24, 1998), fn. 1 ("Failure to move to strike or otherwise object to documentary evidence submitted by a party in support of, or in opposition to, a motion for summary judgment, waives any error in considering that evidence under Civ.R. 56(C)."). Here, neither moving party—Wapakoneta School district or Allison—opposed Pender's affidavit. Consequently, I see no reason why the trial court should not have construed the *basic* evidence of Pender's affidavit (notwithstanding the conclusory legal statements, which the trial court is more than capable of separating) in a light most favorable to the non-moving party—Conley. Accordingly, based on the facts presented, it is my opinion that the trial court acted unreasonably, arbitrarily, and unconscionably by excluding Pender's affidavit.

{¶76} Indeed, based on my review of Pender's affidavit, there is a genuine issue of material fact reflecting an absence of a safety feature constituting a physical defect within the meaning of R.C. 2744.02(B)(4). To illustrate, Pender explained that "[i]t is the responsibility of the coach/staff in charge to create a safe space for any practice or workout particularly when that event is taking place in a more restricted or limited space area." (Doc. No. 71, Ex. 14).

{¶77} In his deposition, Allison testified that he set up the "gym like a baseball field [and] home plate would have been in the northeast corner going out, because most of [the] guys are right-handed [so he] set it up that way." (Apr. 22,

-34-

2021 Depo. at 15). According to Pender, Allison demonstrated "a regard to safely make the team building exercise work within the limited space available" by "creating greater space for the flight of the ball for most hitters." (Doc. No. 71, Ex. 14).

{¶78} However, Pender asserted that Allison did "not go far enough to establish safe space [based on Allison's testimony of Conley's distance] from the batting action." (*Id.*). That is, Allison testified that Conley (and two other players) were standing in the on-deck circle—approximately 10 feet from the batter—down the third-base line. (Apr. 22, 2021 Depo. at 16-17). *See Roberts*, 2014-Ohio-78, at 30 (emphasizing that "the complaint alleges a negligent act, the construction by the Board's agent that it was safe for Roberts to stand in an area that was not, in fact, safe"). Importantly,

> 10 feet is simply not enough space in a gymnasium to create a safety window that protects the on deck hitter or the hitting team members *unless portable netting or a similar barrier* to protect the players is put in place. Had there been more distance between the batter and on deck hitters or had there been a portable screen or netting set up between the batter and on deck hitters this incident would not have occurred.

(Emphasis added.) (Doc. No. 71, Ex. 14).

{¶79} Very plainly, based on that evidence, there is a genuine issue of material fact whether the absence of such safety features constitutes a physical defect for purposes of R.C. 2744.02(B)(4). *See Roberts* at ¶ 29-30 (alleging that the

school was excepted from immunity under R.C. 2744.02(B)(4) because "the Board's agents were negligent in informing Roberts that it was safe to be in an area where a discus could be thrown and in failing to erect a fence, cage, or other device around the rear of the discus circle"). Therefore, this issue must be presented to a trier of fact to be resolved.[2]

**{¶80}** Finally, my review of the record in this case reveals a genuine issue of material fact whether Allison is entitled to immunity under R.C. 2744.03(A)(6). More specifically, applying the appropriate definition for immunity for employees of a political subdivision under R.C. 2744.03(A)(6), it is my opinion that the issue must be presented to a jury to resolve. *See Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 39 ("R.C. 2744.03(A)(6)(b) provides immunity to employees of a political subdivision for acts that are not committed in a *wanton or reckless* manner."). *See also Maternal Grandmother v. Hamilton Cty. Dept. of Job & Family Services*, ___ Ohio St.3d ___, 2021-Ohio-4096, ¶ 7-8. That is, the Supreme Court of Ohio specifically held that "willful" conduct is not a degree of care within the meaning of R.C. 2744.03(A)(6)(b). *See Anderson* at ¶ 40 ("The

---

[2] Based on my resolution of Allison's immunity under R.C. 2744.06(A)(6), there is no genuine issue of material fact that Conley can establish the other elements of the physical-defect exception under R.C. 2744.02(B)(4). *See Leasure v. Adena Local School Dist.*, 4th Ross No. 11CA3249, 2012-Ohio-3071, ¶ 15. That is, there is no genuine issue of material fact that Conley's injury resulted from Allison's negligence and that his injury occurred in the school's gymnasium. *See Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 35 (noting that proof of reckless conduct will suffice to prove negligence).

terms willful,' 'wanton,' and 'reckless' as used in [R.C. 2744.02(B)(1)(b) and 2744.03(A)(6)(b)] are not interchangeable.").

{¶81} In this case, as a matter of law, Allison loses his political-subdivision immunity if he engaged in wanton or reckless conduct. *Accord id.* at ¶ 43 (Lanzinger, J., concurring in part and dissenting in part). As the majority opinion describes, wanton misconduct is defined as "the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Id.* at paragraph three of the syllabus. Likewise, as the majority opinion defines, "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus. To contrast, "negligence is conduct that falls below the reasonable standard of ordinary care and relates to protecting against foreseeable risks to others" and is defined as "'[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation.'" *Id.* at ¶ 45 (Lanzinger, J., concurring in part and dissenting in part), quoting *Black's Law Dictionary* 1133 (9th Ed.2009).

{¶82} I define these terms again to stress that "wanton conduct is more culpable than reckless" conduct and both types of conduct exceed negligence. *Id.* at ¶ 43, 46-47 (Lanzinger, J., concurring in part and dissenting in part). In sum,

"[t]he goal of the immunity statute is to protect political subdivisions and their employees from liability for *negligent* conduct, but not for conduct exceeding negligence." (Emphasis added.) *Id.* at ¶ 47 (Lanzinger, J., concurring in part and dissenting in part).

{¶83} Therefore, the issue before this court is whether there are genuine issues of material fact for a jury to determine as to whether Allison's conduct was greater than negligence—that is, whether Allison's conduct was wanton or reckless. In other words, it is for this court to determine if there is a triable issue as to (1) whether Allison failed to exercise any care toward Conley in a circumstance in which there was great probability that harm will result or (2) whether Allison disregarded a known or obvious risk of harm to Conley that was unreasonable under the circumstances and is substantially greater than negligent conduct.

{¶84} Importantly, the record reflects that Allison knew of the risk of harm (or the risk of harm was obvious to him) in this case. Notably, the evidence presented by Conley reflects that Allison was generally aware of the risk of harm of playing baseball inside a gymnasium and that Allison appreciated the safety of the youth-baseball players. (*See, e.g.*, Allison Depo. at 37). Conspicuously absent from the definition of recklessness is a desire to cause the harm which results from a person's actions. *See Davis v. Brown Local School Dist.*, 7th Dist. Columbiana No. 17 CO 0026, 2019-Ohio-246, ¶ 91. It is without question that Allison did not intend

the specific harm sustained by Conley. However, there is a genuine issue of material fact whether Allison perversely disregarded the known risk of harm. *See A.J.R. v. Lute*, 163 Ohio St.3d 172, 2020-Ohio-5168, ¶ 17 (defining "'recklessness' [under R.C. 2744.03(A)(6)(b)] as 'a perverse disregard of a known risk.'"), quoting *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, paragraph three of the syllabus.

{¶85} To begin with, based on my physical-defect analysis above, those facts also create a genuine issue of material fact that Allison's conduct was (at a minimum) reckless. To be clear, instructing Conley (and the two other players) (1) to position themselves in the on-deck circle; (2) approximately 10 feet from the batter; (3) down the third-base line; (4) while playing baseball inside a gymnasium; and (5) without ensuring that there was an adequate safety feature rises to the level of (at a minimum) reckless conduct. Stated another way, that evidence creates a genuine issue of material fact whether Allison disregarded a known or obvious risk of harm to Conley (and the two other players) by putting them in a situation that was unreasonable under the circumstances. Indeed, Pender offered that, because Allison instructed the youth-baseball players to position themselves in the location that he did, it was Allison's responsibility to ensure adequate safety features were in place "*regardless* of the bat used." (Emphasis added.) (Doc. No. 71, Ex. 14). Consequently, there is a genuine issue of material fact that Allison engaged in

conduct that exceeds negligence—that is, there is a genuine issue of material fact that Allison engaged in conduct *exceeding* the standard of care that a reasonably prudent person would have exercised in a similar situation.

{¶86} The proposition that Allison perversely disregarded the known (or obvious) risk of harm is further emphasized by the following evidence. Significantly, the record unequivocally reflects that Allison provided the youth-baseball players with a modified and significantly damaged device to use for a purpose *other* than its intended purpose. Indeed, Pender acknowledged that Allison made use of the hit stick as "a non-traditional bat" and that the "hit stick was used as a bat." (Doc. No. 71, Ex. 14). Specifically, a hit stick is meant to be used as a "training device" and "*not* [as] a bat" as Allison instructed the youth-baseball players to utilize the hit stick. (Emphasis added.) (*See id.*).

{¶87} Moreover, not only does the evidence in the record reflect that Allison instructed the youth-baseball players to use the hit stick in a manner other than its intended purpose, the evidence in the record unequivocally reflects that Allison knew that it was a damaged "hitting device" and that such damage was in contravention of the rules of the baseball association. Likewise, the record reflects that Allison purposely modified the hit stick in contravention of the rules of the baseball association.

**{¶88}** Importantly, it is undisputed that Allison modified the hit-stick handle with slick-electrical tape and it is undisputed that Allison knew that the hit stick did not have an appropriate knob or protective end caps. Specifically, by taping the hit-stick handle, Allison obscured the "knob" of the hit stick (which is different than a knob of a traditional bat) with the electrical tape. (*See* Allison Depo. at 24). Further, the record reflects that one of the ends of the hit stick is "jagged" and that Conley sustained an injury requiring "shards" to be removed from his eye. (*Id.* at 25, 31); (Doc. No. 71). Allison testified that, had the hit stick had the protective end caps, the shards "would not have gone into [Conley's] eye." (Allison Depo. at 42).

**{¶89}** Moreover, Bradley R. Rex ("Rex"), the athletic administrator for Wapakoneta School District, testified that the Ohio High School Athletic Association follows the rules of the National Federation of State High School Associations ("NFSHSA") and that those rules apply to the junior high school at which Conley was a student athlete. (Rex Depo. at 10). The NFSHSA baseball rules provide, in their relevant part, as follows:

> ART. 2. . . The bat shall have the following characteristics and components.
>
> a. Each legal wood, aluminum or composite bat shall:
>
> * * *
>
>> 2. Not have * * * rough or sharp edges or any form of exterior fastener that would present a potential hazard.

3. * * * Bats that are broken [or] altered * * * are illegal.

b. Each legal wood, aluminum, or composite bat shall have the following components:

1. Knob – The bat knob shall protrude from the handle. * * * [W]rappings are permitted except those that cause the knob to become flush with the handle. A one piece rubber knob and bat grip combination is illegal.

* * *

5. End Cap – The end cap is made of rubber, vinyl, plastic or other approved material. It shall be firmly secured and permanently affixed to the end of the bat so that it cannot be removed by anyone other than the manufacturer, without damaging or destroying it. By definition, a one-piece construction bat does not have an end cap.

c. Each bat not made of a single piece of wood shall:

1. Have a safety grip made of cork, tape (no smooth, plastic tape) or commercially manufactured composition material. * * * *Slippery tape* or similar material shall be *prohibited*.

* * *

ART. 5 . . . Bats that are altered from the manufacturer's original designed and production, or that do not meet the rule specifications, are illegal.

(Emphasis added.) (Doc. No. 71, Ex. 1).

{¶90} Even though Allison contends that he does not consider a hit stick to be a bat and argues that the rules only apply to games, Allison testified that he is aware of the NFSHSA rule prohibiting the application of slippery tape to bats and the rules requiring bats to have a knob and protective end caps. (Allison Depo. at

32-34); (Doc. No. 71, Ex. 1). *See Davis*, 2019-Ohio-246, at ¶ 85 (observing that "the violation of a statute, ordinance, or departmental policy enacted for the safety of the public is not per se willful, wanton, or reckless conduct, but may be relevant to determining the culpability of a course of conduct."), quoting *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, at ¶ 37. *See also Baab v. Medina City Schools Bd. of Education*, 9th Dist. Summit No. 28969, 2019-Ohio-510, ¶ 15 (analyzing the violation of a school policy under R.C. 2744.03(A)(6)(b)). Notably, as I discussed above, the record supports that the hit stick is not a bat but that Allison instructed the youth-baseball players to use it as a bat.

{¶91} Nevertheless, Allison agreed that it is "more dangerous to use [the hit stick] without having the appropriate [knob and protective end caps] on the bat" and Rex concurred. (Allison Depo. at 24); (Rex Depo at 17-19, 22, 24). *Compare Davis* at ¶ 85-86 (noting evidence of a policy violation demonstrates negligence at best without evidence of knowledge that the violation of the policy will likely result in an injury). Likewise, Allison testified that the purpose of the knob is "so your hand at the end [does not] slip off." (Allison Depo at 23). In this case, Conley was injured after the batter's hand slipped off the end of the hit stick. (*See id.* at 21). Allison further testified that his intention for putting the electrical tape on the bat was not for the safety of the players; rather, his intent was "to repair [the hit stick] so that [the players] would not cause any damage." (Allison Depo at 20). However, despite

the rule prohibiting the use of slippery tape on bats during a game, Allison testified that he did not think using slick-electrical tape would make the hit stick slippery. (Allison Depo. at 36).

{¶92} Notwithstanding Allison's argument as to the application of the rules, such decision on the application of the rules is a determination for the trier of fact. Indeed, Pender asserts that it the intent of the rules "is to establish regulations that protect the participants in a baseball sporting event regardless of location, venue or in a game, [or] in practice status." (Doc. No. 71, Ex. 14). Consequently, the presence of the rules and Allison's awareness of their purpose create a genuine issue of material fact of the risk of harm that Allison consciously disregarded. *Compare Artim v. Lorain Cty. Bd. of Dev. Disabilities*, 9th Dist. Lorain No. 12CA010214, 2013-Ohio-2372, ¶ 16 (concluding that the intentional violation of a "policy without a reasonable purpose to do so" constitutes evidence of failing "to exercise any care and consciously disregarded a 'known or obvious risk of harm,' which a jury might conclude is greater than negligence"), quoting *Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, at paragraphs three and four of the syllabus.

{¶93} In sum, viewing that evidence in a light most favorable to Conley, it is my opinion that there is (at a minimum) a genuine issue of material fact that Allison acted recklessly—that is, there is a genuine issue of material fact that there was a known risk of harm and that Allison perversely disregarded that harm. *See*

*id.* Importantly, it is not the function of this court to weigh the evidence in any way or to pass judgement on it. Rather this court's role is to determine whether Conley presented evidence creating a genuine, triable issue. *See A.J.R.*, 163 Ohio St.3d 172, 2020-Ohio-5168, at ¶ 26 (asserting that, when "responding to a motion for summary judgment, the nonmovant 'must show that the issue to be tried is genuine and may not rely merely upon the pleadings or upon unsupported allegations.'"), quoting *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, ¶ 21. I contend that he has. Therefore, construing the evidence in the record (mostly strongly in Conley's favor as we are required to do), this court cannot say that reasonable minds can come to only one conclusion and that one conclusion being that Allison is entitled to a judgment as a matter of law.

{¶94} Thus, based on the foregoing, I would reverse the trial court's decision granting summary judgment in favor of Wapakoneta School District and Allison.

/jlr